**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **AMANDA BLANCHARD** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **vs.** | ) | |
| | ) | |
| **City of Chicago** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**COMPLAINT AND JURY DEMAND**

## I.    INTRODUCTION

Effective September 15,  2023 Amanda Blanchard, a former City of Chicago ("Chicago") Administrative Assistant resigned her employment after almost 15 years of employment rather than be terminated over a dispute whether she followed Chicago's mandatory residency policy. (Exh A).

All officers and employees of the city shall be actual residents of the city. Any officer or employee who shall fail to comply with the provisions of this section shall be discharged from the service of the city in the manner provided by law. MCC § 2-152-050.

Ms. Blanchard alleges that decision to recommend her termination and the resulting constructive discharge was discriminatory on the basis of age, race, and/or sex.

1

## II. JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(3), and (4), 2201 and 2202, 42 U.S.C. 2000d-2 and 2000e-5

2. This is a suit authorized and instituted pursuant to the Act of Congress known as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., as amended, "The Civil Rights Act of 1866", 42 U.S.C. § 1981 via the Equal Protection Clause of the 14th Amendment, and the Age Discrimination in Employment Act.

3. Venue is proper in the Northern District of Illinois because the unlawful employment practices alleged herein were committed by the Defendant here. Venue is proper pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §1391(b).

## III. PARTIES

4. Plaintiff Amanda Blanchard is an African American female, and a resides within Northern District of Illinois. Ms. Blanchard worked for the Defendant from 2008 until September 15, 2021. Ms. Blanchard is over the age of 55.

5. Defendant City of Chicago ("Chicago") is a municipal government and a political subdivision created pursuant to the laws of the State of Illinois and is located in this district thus is a person within the meaning of 42 U.S.C. § 2000e(a).

## IV.    ADMINISTRATIVE EXHAUSTION

6.      Ms. Blanchard fulfilled all conditions necessary to the institution of this action under Title VII,  and Age Discrimination In Employment Act by filing a timely charge of discrimination. (Ex. B)  The United States Department of Justice issued a Determination and Notice of Rights Right to Sue on August 14, 2025 and Blanchard is filing this Complaint within 90-days of receiving the same. (Ex. C)

## V.    STATEMENT OF FACTS

7.      Plaintiff re-alleges and incorporate by reference the foregoing paragraphs with the same force and effect as if fully set out in specific detail herein.

8.      In September 2008, Blanchard became employed with the City of Chicago in the Department of Support and Family Services ("DFSS")

9.      In 2008, Blanchard worked as a visual aide and then as an Administrative Assistant II.

10.     At the time of her hire, Blanchard resided at the South Marshall address.

11.     In 2016, Blanchard purchased the South Holland property but she remained at her South Marshall address.

12.     Ms. Blanchard purchased the property in her own name.

13.     Ms. Blanchard has two children with unique needs.   One child has schizophrenia and the other has gender dysphoria.

14.     Ms. Blanchard although separated from her husband and he lived at the South Holland property with the children.

15.     Ms. Blanchard was frequently at the property to help with children.

16.     Ms. Blanchard never denied frequently being present at the South Holland property.

17.     On January 24, 2020, the City of Chicago Office of Inspector General ["OIG"] was notified of a complaint that Ms. Blanchard possibly resided outside of the City.

18.     The OIG investigation of Ms. Blanchard included simultaneous surveillance at the two locations, reviewed thousands of her bank record transactions, reviewed of her utility bills, vehicle registration, and reviewed her mortgage information reflecting that she obtained credit in her own name, among other techniques.

19.     In addition, Ms. Blanchard was interviewed by the OIG which was transcribed by a court reporter.

20.      The OIG concluded that Ms. Blanchard while Ms. Blanchard may have been present at the South Marshall address, she did not intend to abandon her South Holland property and recommended her termination and ineligibility for re-

hire.

21.    Summary of the Report of Investigation City of Chicago Inspector General included, "OIG's investigation has established by a preponderance of the evidence that Blanchard resides in South Holland in violation of the MCC and the City Personnel Rules.  To establish residency a person must have: (1) physical presence at the place and (2) and intent to remain in the place as permanent home. *Makysm*, 242 Ill 2d at 319.  OIG's review and analysis of the evidence including surveillances, documentary evidence, and Blanchard's own testimony—revealed that Blanchard purchased, established a physical presence at, and does not intend to abandon the South Holland Property." OIG Report pg. 11

22.    To help determine intent, OIG's analysis concluded that Ms. Blanchard current residency could be divined from her testimony concerning her future retirement plans.

23.    OIG's report included, "Her presence at the City property is clearly temporary. This fleeting presence is further evidence by Blanchard's own admission that she planned to live at the South Holland Property **when she retires**." OIG report pg. 13. (emphasis added)

24.    As a result of the recommendation of termination and being informed that she would lose her retirement benefits if terminated, Ms. Blanchard submitted the resignation letter. [Ex. A]

25. During Ms. Blanchard's city employment, she lived at her address on South Marshfield Avenue in the City of Chicago. In 2021, the City contended Ms. Blanchard lived at an address on Wausau Court in South Holland, IL.

26. Ms. Blanchard did not abandon her city address following the purchase of the South Holland property; however, African Americans have left the City for immediately adjacent suburbs seeking a more hospitable environment for their families. https://news.wttw.com/2022/03/13/census-black-population-grows-suburbs-shrinks-cities[1] Given the exodus of African Americans for the suburbs, excluding their possible employment based on residency has a disparate impact. See also, "*Black People Are Leaving Chicago en Masse. It's Changing the City's Power Politics*"

https://www.politico.com/news/magazine/2021/12/07/chicago-black-population-decline-523563

27. South Holland, Illinois is comprised of over 75% African American residents who cannot seek jobs with the City due to residency requirements.

https://censusreporter.org/profiles/16000US1770850-south-holland-il/

28. Acquiring a safer residence in an immediately city adjacent

---

[1] "In Roseland, residents note persistent crime, delayed city services and a train line that ends at Roseland's northern edge. Worries persist about population loss diluting Black political power as drafts of a political remapping show fewer majority-Black wards. Many said those issues forced them to leave."
Truck driver Chris Calhoun, 32, sought more peace in suburban South Holland in 2014.
The deciding factor for him, he said, was, "Where can I live where my kids can go outside and ride their bikes, or we can take a walk around the block as a family without looking over my shoulder?"

neighborhood and the resulting employment status disqualification has a disparate impact against minority applicants for non-emergency related jobs.

29. For persons of other races not born in the United States the City has been flexible for pre-employment residency requirements based on the protected status of national origin. See *United States of America v. City of Chicago* Case No. 16 C 1969

30. The termination recommendation, in part, stemmed from Ms. Blanchard affirmatively stated intention to retire to the South Holland property *in the future,* not where she presently resided.

## COUNT I

### Intentional Age Discrimination

**Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 623(a)(1)**

30.Ms. Blanchard re-states and incorporates by reference all applicable paragraphs above as part of this Count of the Complaint.

31. The City of Chicago discriminated against Ms. Blanchard in violation of The Age Discrimination in Employment Act in the terms and conditions of her employment, including but not limited to investigation, termination and recommendation of no rehire and constructive discharge.

32. OGI's determination of residency and resulting termination

7

recommendation in part was based on Ms. Blanchard's future retirement plans reflecting age discrimination.

33. The foregoing conduct constitutes illegal, intentional discrimination And unjustified disparate treatment prohibited by 29 U.S.C. § 623(a)(1).

## COUNT II

### Disparate Impact Age Discrimination 29 U.S.C. § 632(a)(2)

33. Ms. Blanchard re-states and incorporates by reference all applicable paragraphs above as part of this Count of the Complaint.

34. The City maintains a discriminatory a residency rule and/or interpretations of residency based on future retirement plans which has an adverse impact on employees ages 40 and older in violation of the ADEA and is not, and cannot be, justified by reasonable factors other than age nor is bona fide occupational qualification.

35. Making a termination recommendations based on the location where someone hoped to retire and purchased property outside the City damaged Ms. Blanchard and others.

### COUNT III
**Intentional Discrimination on the Basis of Race
in Violation of Title VII of the
Civil Rights Act of 1964 and 42 U.S.C. § 1981**

8

36. Plaintiff restates and incorporate by reference all applicable paragraphs above as part of this Count of the Complaint.

37. The 42 U.S.C §1981 claim is brought via 42 U.S.C §1983.

38. Citizens of other races have been granted exceptions based on the protected category of national origin to the City's pre-residency requirements for their benefit.

39. The City discriminated against Ms. Blanchard because of her race, violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 which is brought via. §1983.

40. By reason of Defendant discriminatory employment practices regarding the residency requirement, Ms. Blanchard has experienced extreme harm, including terms and conditions of employment, had her purchasing decisions questioned, experienced constructive discharge, loss of compensation, wages, back and front pay, and other employment benefits, and, as such, are entitled to all legal and equitable remedies available under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

## COUNT IV

### Disparate Impact Discrimination on the Basis of Race
### In Violation of Title VII of the Civil Rights Act of 1964

41. Ms. Blanchard restates and incorporate by reference all applicable paragraphs above as part of this Count of the Complaint.

42.     The criteria utilized by Defendant in making discipline and terminations recommendations on the basis of race in violation of §703(k) of Title VII, 42 U.S.C. §2000e-2(k).

43.     The residency rule while neutral in appearance has a disparate impact by restricting access to city employment by African Americans in South Holland, Illinois and neighborhoods immediately adjacent to the city.  South Holland, Illinois is reported to be 76.7% African American which is over double the African American employment rate by the city.

44.     While maintaining her southside residency, Ms. Blanchard secured the South Holland property for her children's safety benefit and her retirement.

45.     The City recognizes that enforcement of residency rules can have a disparate impact and relaxed pre-employment residency requirements for other races based on the protected category of national origin.

46.     Defendant maintained these discriminatory policies, patterns, and/or practices both within and outside the liability period in this case.  As a direct result of Defendant's discriminatory policies and/or practices as described above, Blanchard Plaintiff suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

## COUNT V

### Intentional Discrimination on the Basis of Gender in Violation of Title VII of the Civil Rights Act of 1964

47. The Defendant discriminated against Blanchard with regards to investigation, constructive discharge, recommendation for termination and barring her from future employment, compensation and other terms and conditions of employment because of her gender, female, in violation of Title VII of the Civil Rights Act of 1964.

48. Blanchard was subject to sex based and sex-based stereotypes discrimination in the decisions to review thousands of her bank transactions (she had not been accused of any financial misconduct in the operation of a City program), her access to credit and mortgage markets without her listing her male husband and make residency judgments based on her spending habits and property buying decision was held against her in the making the residency determination and recommendation.

49. By reason of the Defendant's discriminatory employment practices, Blanchard has experienced extreme harm, including loss of compensation, wages, and seeks back and front pay, and other employment benefits, and, as such, are entitled to all legal and equitable remedies available under Title VII of the Civil Rights Act of 1964.

11

## COUNT VI

**Disparate Impact Discrimination on the Basis of Gender In
Violation of Title VII of the Civil Rights Act of 1964**

50. The residency rule and/or criteria utilized by the Defendant in making termination recommendations -as to where someone resides discriminates on the basis of gender in violation of §703(k) of Title VII, 42 U.S.C. §2000e-2(k).

51. The residency rule and investigatory processes disparately impacted Blanchard because they allow(ed) subjectivity about where she spent time, purchasing decisions in reviewing her personal bank records making judgments about where she bought food and other items as well as property decisions to influence employment recommendations.

52. Because of this rule, the decision-makers are free to exercise their discretion in an unguided, subjective manner that provides a ready mechanism to allow discriminatory judgments upon female employees about their ability to make property purchases without men listed as a co-owner. Blanchard explained why her husband from she was separated was not included on the mortgage documents.

53. The Defendants maintained these discriminatory policies, patterns, and/or practices both within and outside the liability period in this case.

54. As a direct result of the Defendant's discriminatory policies and/or practices

as described above, Blanchard suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff pray for relief as follow:

1.    A declaratory judgment that the practices complained of herein are unlawful and violate the ADEA, Title VII, and 42 U.S.C. § 1981.

2.    An order that the City institute and carry out policies, practices, and programs that provide equal employment opportunities for all minorities in assessment of the residency rules- not making changes restricted to National Origin, and that it eradicate the effects of its past and present unlawful employment practices.

3.    For back pay, front pay and other monetary relief according to proof (including interest and benefits).

4.    For all damages sustained as a result of the Company's conduct according to proof;

5.    For compensatory damages for emotional distress and mental suffering, nominal damages, and

6.    For reasonable attorneys' fees and cost including under to the extent allowable by law.

7.  Pre-judgment and post-judgment interest, as provided by law;

8.  For such ancillary orders, decrees and such further legal and equitable relief as may be necessary to enjoin and restrain the improper conduct and wrongdoing of Defendant; and,

9.  For such other and further relief as the Court deems proper.

**JURY TRIAL DEMANDED ON ALL CLAIMS THAT ALLOW FOR TRIAL BY JURY**

Respectfully submitted,

/s/Lee Winston
Lee Winston-Pro Hac Vice Forthcoming
Roderick T. Cooks- Pro Hac Vice Forthcoming
Bethany M. Neal- Pro Hac Vice Forthcoming

**OF COUNSEL:**
Winston Cooks, LLC
420 20th Street North
Suite 2200
Birmingham, AL 35203
Telephone:  (205) 482-3551
Facsimile:   (205) 278-5876

14