**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AMANDA BLANCHARD,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO,<br><br>Defendant. | No. 1:25-CV-13902<br><br>Judge Thomas M. Durkin |

## MEMORANDUM OPINION AND ORDER

Amanda Blanchard ("Blanchard") brought this suit against her former employer, the City of Chicago ("Defendant"), alleging unlawful discrimination on the basis of age, sex and race as well as disparate impact discrimination on those same grounds, in violation of Title VII and the ADEA. Defendant moves to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is granted as to the disparate impact claims and otherwise denied.

## Legal Standard

A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of the complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020) (citation omitted). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While detailed factual allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 570). "Facial plausibility exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023). In evaluating a motion to dismiss a discrimination claim, "these requirements mean a plaintiff must advance plausible allegations that she experienced discrimination because of her protected characteristics." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022).

**Background**

Blanchard is an African American woman over the age of 55. R. 1 ¶ 4. She began working for Chicago's Department of Family and Support Services in September of 2008 until her resignation on September 15, 2023. *Id.* ¶¶ 4, 8–10. As a condition of employment, all city employees, including Blanchard, were required to be residents of the city. *Id.* ¶ 1 (citing Mun. Code of Chi. § 2-152-050). Blanchard asserts that she complied with this condition, residing within the Chicago city limits at an unspecified address on South Mansfield Avenue. *Id.* ¶¶ 10, 25.

In 2016, Blanchard purchased property in the suburb of South Holland (hereinafter the "South Holland Property"). *Id.* ¶¶ 11–12. Blanchard's two children, each with unique mental health needs, moved into the South Holland Property with Blanchard's husband, from whom she is currently separated. *Id.* ¶¶ 14–16. Blanchard

maintains that she continued to reside at her Chicago residence, although she admittedly was frequently at the South Holland Property to help care for her children. *Id.* ¶¶ 15-16.

In January 2020, the Chicago Office of Inspector General ("OIG") received an anonymous complaint that Blanchard resided outside of Chicago city limits. *Id.* ¶ 17. The OIG's inquiry employed numerous investigative measures, including: physical surveillance at the two addresses, reviewing Blanchard's bank records, as well as her vehicle registration, utility bills, mortgage information and conducting a recorded interview of Blanchard. *Id.* ¶¶ 18–19. The OIG concluded that Blanchard was residing at the South Holland Property in violation of MCC § 2-152-050. *Id.* ¶ 21. Accordingly, the OIG recommended Blanchard's termination. *Id.* ¶ 20. Following OIG's recommendation, Blanchard was presented with an ultimatum: resign or be terminated. R. 1-1. Blanchard was informed that if she was terminated, she would lose her retirement benefits. *Id.* Fearing she would lose her retirement benefits, Blanchard resigned from her position on September 15, 2023. R. 1 at 1, ¶ 24.

Blanchard alleges two separate bases for her claims: (1) the City's residency determination was motivated by age, race, and sex; and (2) the residency requirement has an impermissible disparate impact based on age, race and sex.

## Discussion

I. <u>Counts I, III,[1] and V: Intentional Discrimination</u>

---

[1] Count III alleges unlawful racial discrimination under Title VII and 42 U.S.C § 1981 (brought via 42 U.S.C §1983). R. 1 ¶ 39. Those claims are analyzed under the same framework. *See Barnes v. Bd. of Trs. of Univ. of Ill.*, 946 F.3d 384, 389 (7th Cir. 2020)

Blanchard argues that she was constructively discharged when Defendant informed her that she could either voluntarily resign or be involuntarily terminated and lose her retirement benefits. To prevail on a claim of constructive discharge, Blanchard must allege that she "was forced to resign because [her] working conditions, from the standpoint of the reasonable employee, had become unbearable." *Beverly v. Abbott Labs.*, 107 F.4th 737, 745 (7th Cir. 2024) (citing *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010)). Constructive discharge is sufficiently alleged "when *the employer's actions* communicate to the employee that she immediately and unavoidably will be terminated." *Wright v. Illinois Dep't of Child. & Fam. Servs.*, 798 F.3d 513, 528–29 (7th Cir. 2015) (emphasis original).

The Court finds that the alleged resign-or-be-fired ultimatum plausibly supports a claim of constructive discharge. Crediting the allegation, Defendant presented Blanchard with no avenue for keeping her job. Under those circumstances, a reasonable employee would understand that termination was a foregone conclusion and view resignation as the only viable path to keeping her retirement benefits. Having found constructive discharge plausibly alleged, the Court addresses whether that constructive discharge was motivated by age, race or sex.[2]

("The legal standard for analyzing racial discrimination claims under Title VII and § 1983 is the same.").

[2] The Court notes that the mere fact that Blanchard was investigated does not, standing alone, constitute an adverse action against a term or condition of employment. *See Saud v. DePaul Univ.*, 154 F.4th 563, 568 (2025) (Rejecting argument that investigation was actionable, remarking that "[w]hile the investigation had downstream consequences, [plaintiff] has not presented a triable

*a. Age Discrimination*

Blanchard alleges that the OIG's residency determination, which led to her alleged constructive discharge, rested in part on her plans to live at the South Holland property upon retirement. Retirement-related considerations may be actionable under the ADEA when they serve as a proxy for age. *See Ky. Ret. Sys. v. EEOC*, 554 U.S. 135, 142 (2008) (Noting that reliance on pension status may violate the ADEA when it serves as a proxy for age.).

Blanchard argues that the OIG's characterization of her Chicago residence as "clearly temporary" because she planned to live in South Holland upon retirement supports an inference that the OIG's finding rested on "age-linked assumptions." R. 24 at 9–10. Defendant responds that Blanchard does not identify the particular age-based assumptions the OIG allegedly made. But that omission does not end the inquiry. At this stage, Blanchard receives "the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Thomas*, 120 F.4th at 1337–38.

Blanchard alleges that she was over 55, that she planned to live in South Holland upon retirement, and that the OIG discredited Blanchard's testimony, relying on those future retirement plans to characterize Blanchard's Chicago residence as "clearly temporary" and "fleeting." As a result, the OIG recommended

---

fact about whether the process meaningfully altered his employment."). Because the investigation does not independently support an actionable claim, the Court need not reach the City's arguments that such a claim is untimely or not administratively exhausted.

Blanchard's termination.[3] Read together and in the light most favorable to Blanchard, those allegations permit the inference that OIG assumed, because of her age, that retirement and relocation were sufficiently imminent to undermine her claim of current Chicago residency. That assumption allegedly informed the residency determination that supplied the basis for the ultimatum.[4]

Defendant's competing interpretation—that OIG considered her retirement plans solely as evidence of residential intent—may ultimately prove correct. But the availability of that interpretation does not foreclose Blanchard's plausible age-based explanation at the pleading stage. Whether she can substantiate that inference and establish constructive discharge is better resolved on a developed record. Defendant's motion to dismiss Count I is therefore denied.

*b. Race & Sex Discrimination.*

Blanchard alleges that the OIG's residency determination and resulting constructive discharge were influenced by stereotypes concerning her race and sex. Her EEOC charge states that "[t]he inability to acknowledge that an African American woman can own property where they do not live is race/sex-based

---

[3] Defendant emphasizes that OIG's determination was a nonbinding recommendation. But Blanchard alleges that, following that recommendation, she was told to resign or face termination and the loss of her retirement benefits. Read together, these allegations plausibly connect OIG's residency determination to the ultimatum that allegedly compelled her resignation. That OIG lacked authority to make the final employment decision does not, at this stage, foreclose the inference that its determination supplied the basis for that decision.

[4] That Blanchard volunteered the information about her retirement does not resolve whether investigators drew an age-based inference in determining Blanchard's residence.

stereotype biased thinking." R.1-1. The Complaint further alleges that her purchase of the South Holland property without her husband's participation was held against her in the residency determination.

Defendant argues that these allegations do not plausibly suggest discrimination because property ownership, mortgage arrangements, and financial transactions were relevant to a residency investigation. But the relevance of that information does not resolve whether investigators employed discriminatory assumptions in weighing it. Blanchard's theory is that the assessment of her ownership and household arrangements was influenced by race-based and sex-based stereotypes, which caused Defendant to reject her explanation that she owned the South Holland property for her family while maintaining her own residence in Chicago.

Defendant further argues that Blanchard does not explain how the alleged race and sex-based stereotypes affected the residency determination. Although conclusory assertions of discrimination are insufficient, *see Kaminski*, 23 F.4th at 776–77, Blanchard identifies the particular assessment allegedly affected by discriminatory assumptions and connects that assessment to the residency finding that led to her forced resignation. *See Freeman v. Metro. Water Reclamation Dist. of Greater Chi.*, 927 F.3d 961, 965 (7th Cir. 2019) (a plaintiff need "only to allege . . . that [his employer] fired him because of his race."); *Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir. 1998) ("all a complaint has to say" is "I was turned down for a job because of my race."). Read in her favor, these allegations plausibly suggest that investigators relied

on assumptions about Blanchard as a Black woman in determining where she lived, and that the resulting residency finding led to her alleged constructive discharge.

Defendant's contrary explanation—that investigators considered her ownership and family arrangements without regard to race or sex—may ultimately prove correct. At this stage, however, Blanchard need not substantiate her stereotyping allegations with discriminatory remarks, comparator evidence, or other proof of the investigators' reasoning. *See Thomas*, 120 F.4th at 1338 ("All the complaint need do is state a grievance. . . [d]etails and proofs come later."). Defendant's motion to dismiss Counts III and V is therefore denied.

II. Disparate Impact Discrimination.

Blanchard also alleges that the Defendant's residency requirement has a disparate impact based on age, race, and sex. These claims require factual allegations supporting a plausible inference that an identified employment practice disproportionately harms members of the relevant protected group. Although a plaintiff need not prove that disparity at the pleading stage, conclusory assertions of disproportionate impact are insufficient. *See Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014). In *Adams*, the Seventh Circuit affirmed dismissal because the complaint lacked factual allegations connecting the challenged promotion procedures to racial disparity. *See id.* at 733 (noting that in disparate impact cases, courts "would expect to see some factual content in the complaint tending to show that the [policy], or some particular part of it, caused a relevant and statistically significant disparity[.]"). Blanchard's disparate impact claims are similarly lacking.

Blanchard alleges that South Holland's population is approximately 76.7% African American and that African Americans have increasingly moved from Chicago to neighboring suburbs. But the residency requirement excludes residents of all municipalities outside Chicago. The racial composition of one such municipality does not, without additional context, support an inference that the requirement disproportionately excludes African Americans overall. Nor does comparing South Holland's population with Chicago's workforce explain how the residency requirement caused a racial disparity in employment opportunities. Although Blanchard need not present a completed statistical analysis, she must provide some factual basis connecting the broader operation of the requirement to the disproportionate effect alleged. These allegations do not supply that connection.[5]

The age-based claim likewise lacks sufficient factual development concerning the alleged disparate effect. Blanchard alleges that Defendant's consideration of future retirement plans adversely affects employees aged forty and older. But she does not allege facts supporting an inference that this practice causes older employees to be found in violation of the residency requirement more frequently than younger employees. Her allegations explain how consideration of her retirement plans

---

[5] Nor does Defendant's alleged relaxation of other residency requirements fill the gap. Those exceptions may show that residency requirements can operate differently in different contexts. They do not, however, without more, support an inference that the requirement challenged here disproportionately excludes African Americans. Similarly, Defendant's reliance on *N.A.A.C.P. v. Town of Harrison, N.J.* is misplaced. 940 F.2d 792 (3d Cir. 1991). That case supports the proposition that a municipal residency requirement can produce actionable disparate impact but at issue here is the more particular question of whether Blanchard's allegations plausibly connect the residency requirement at issue to the purported disparate impact. They do not.

contributed to her own residency determination; they do not sufficiently explain why that practice produces a disproportionate adverse effect on older employees generally.

The sex-based disparate impact claim is similarly deficient. While Blanchard challenges subjective investigative criteria concerning spending, property ownership, and family relationships, she does not allege facts supporting an inference that those criteria generally cause women to be found in violation of the residency requirement more frequently than men. Her allegation that investigators applied a sex-based stereotype in evaluating her property ownership supports her intentional-discrimination claim but does not itself supply the missing allegation of a disproportionate effect.

Because Blanchard has not plausibly alleged the requisite disparate effects, Defendant's motion to dismiss Counts II, IV, and VI is granted without prejudice. Blanchard may amend those claims to address the deficiencies identified above.

## Conclusion

For the foregoing reasons, Defendant's motion to dismiss is granted as to Counts II, IV and VI and denied as to Counts I, III, and V. Plaintiff may file an amended complaint by December 15, 2026, if she believes she can cure the deficiencies identified herein.

ENTERED:

Thomas M Durkin

Honorable Thomas M. Durkin
United States District Judge

Dated: November 19, 2026